**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Michael Walsh,

                Plaintiff,

                                              Civ. No. 05-1616 (RHK/AJB)
                                              **MEMORANDUM OPINION**
                                              **AND ORDER**

v.

Banta Corporation, d/b/a Banta
Premedia Services,

                Defendant.

William B. Butler, Biersdorf & Associates, P.A., Minneapolis, Minnesota, for Plaintiff.

Frank A. Dvorak, Foley & Mansfield, P.L.L.P., Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

       This case involves the interpretation of an employment contract under Minnesota law. Plaintiff Michael Walsh brought this action against his former employer, Defendant Banta Corporation ("Banta"), alleging Banta failed to reimburse him for relocation expenses he incurred while relocating to Minnesota. Banta moves for summary judgment, arguing that it was not obligated to pay Walsh the relocation expenses at issue. For the reasons set forth below, the Court will grant the motion.

**BACKGROUND**

In March of 2004, David Peterson of Banta telephoned Walsh to discuss the possibility of Walsh joining Banta to manage a new, in-house creative group to support Banta's catalogue business. (Walsh Dep. Tr. at 29-31.) At the time, Walsh was employed with New England Business Service in Groton, Massachusetts. (Id. at 11.) Following several telephone conversations, Peterson invited Walsh to visit Banta's Chanhassen, Minnesota, facility and interview for the position. (Id. at 31-32.) Walsh traveled to Chanhassen in April of 2004 and met with Banta's management team. (Id. at 32.) At that meeting, Banta employees informed Walsh that Banta had a relocation package for its employees, although the specifics of which were not discussed. (Id. at 34.)

Following the meeting in Chanhassen, Banta suggested that Walsh develop a business plan for Banta's in-house creative group. (Id. at 35; Peterson Dep. Tr. at 24.) All candidates for the position were encouraged to develop a business plan to demonstrate their abilities to form and manage a creative design staff. (Peterson Dep. Tr. at 24.) Walsh developed a one-year business plan for Banta while in Massachusetts. (Walsh Dep. Tr. at 35.) In May 2004, Walsh made a second trip to Chanhassen and presented his business plan to Banta's management team. (Id. at 35-37.) Banta's management team evaluated this business plan for the purpose of determining whether Walsh had the experience required for the position. (Peterson Dep. Tr. at 27.)

During this second trip, Walsh discussed with Peterson the general salary and benefit structure for the position, including Banta's relocation package. (Walsh Dep Tr. at

36; Peterson Dep. Tr. at 23.)  However, none of the specifics of the relocation package were discussed.  (Walsh Dep. Tr. at 36.)

On June 7, 2004, Peterson sent a letter to Walsh offering him a position as Banta's Creative Services Manager.  (Dvorak Aff. Ex. 2).  In the letter, Peterson stated that Walsh was "eligible for relocation expenses according to Banta Corporation['s] relocation policy. A copy of the relocation policy for you to review will be coming [from] our Corporate office."  (Id.)  On June 22, 2004 Walsh signed the offer letter and accepted employment with Banta.  (Id.)  On June 28, 2004, Walsh commenced his employment at Banta's Chanhassen, Minnesota, facility. (Id.)

Prior to June 28, 2004, Walsh spoke with Banta employee Barbara Sweeney about Banta's Tier II relocation repayment agreement ("relocation agreement").  (Walsh Dep. Tr. at 45-47.)  Walsh and Sweeney went over the relocation agreement "page by page to talk about the benefits for us."  (Id.)  On the day Walsh commenced his employment, he signed the relocation agreement.  (Butler Aff. Exs. 9, 10.)  The relocation agreement provides several requirements for eligibility for relocation assistance.  Among those requirements are that "[Walsh is] a regular full time employee or a new hire" and that "[t]he assignment is intended for 52 weeks or more."  (Dvorak Aff. Ex. 3 at 3.)  The agreement also provides that an employee who voluntarily terminates his employment within the first year must repay all of the relocation benefits he has received from Banta.  (Butler Aff. Ex. 10.)

Walsh served as Creative Services Manager for Banta from June 2004 until December 16, 2004.  (Walsh Dep. Tr. at 11.)  While he was employed with Banta he

3

incurred $28,581.75 in relocation expenses.  (Dvorak Aff. Ex. 4.)  Banta reimbursed Walsh for all of these expenses.  (Id.)

On December 16, 2004, Banta terminated Walsh's employment.  (Walsh Dep. Tr. at 66.)  Following his termination, Walsh asked Lori Derrickson, an employee in Banta's Human Resources Department, if Banta would reimburse him for the remaining relocation expenses that he had not yet incurred.[1]  (Id. at 67.)  Derrickson informed him that Banta would not pay for future relocation expenses and advised him to speak with Banta's legal representatives.  (Id. at 68.)  Walsh thereafter contacted Robin Schroeder, Senior Counsel at Banta.  (Dvorak Aff. Ex. 4.)  Schroeder reviewed Walsh's offer letter and the relocation policy signed by Walsh and informed him that "[he] believe[d] that Banta . . . has fulfilled all of its obligations to [Walsh]."  (Id.)

On February 7, 2005, some seven weeks after his employment with Banta was terminated, Walsh executed a Purchase and Sale Agreement to sell his Massachusetts home.  (Dvorak Aff. Ex. 5.)  On February 20, 2005, Walsh executed a Purchase and Sale Agreement to purchase a home in Minnesota.  (Dvorak Aff. Ex. 7.)  On February 22, 2005, Walsh shipped his household goods from Massachusetts to Minnesota.  (Butler Aff. Ex. 14; Dvorak Aff. Ex. 9.)  On February 24, 2005, Walsh closed on the sale of his Massachusetts home.  (Butler Aff. Ex. 15; Dvorak Aff. Ex. 6.)  On March 24, 2005, Walsh finalized the

---

[1] These expenses would include costs associated with selling his home in Massachusetts, purchasing a home in Minnesota, and transporting his belongings from Massachusetts to Minnesota.  (Butler Aff. Exs. 14, 15, 16; Dvorak Aff. Exs. 6, 8, 9.)

purchase of a home in Minnesota.  (Butler Aff. Ex. 16; Dvorak Aff. Ex. 8.)  After he left Banta, Walsh claims to have incurred $75,468.44 in relocation expenses that were not reimbursed by Banta.  (Walsh Dep. Tr. at 55-73; Butler Aff. Exs. 14, 15, and 16.)

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50  (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  See Celotex, 477 U.S. at 322; Mems v. City of St. Paul Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the non-moving party.  See Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The non-moving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

Under Minnesota law, "[c]ontract interpretation is a question of law . . . [and] the primary goal of contract interpretation is to determine and enforce the intent of the

5

parties." Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004). "To interpret the terms of a contract under Minnesota law, [the Court] must initially determine if the contract is ambiguous." Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 470 (8th Cir. 2004) (citations omitted). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible to more than one interpretation." Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003) (internal quotation omitted). "[A] mere difference of opinion as to the proper interpretation does not render the contract ambiguous as a matter of law." Press Mach. Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir. 1984) (discussing similar standard under Missouri law). "If a contract is unambiguous, the contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." Denelsbeck, 666 N.W.2d at 347 (internal quotation and citations omitted).

### Interpretation of the Relocation Agreement

The relocation agreement unambiguously provides that an individual is only eligible for relocation benefits if that individual is a full-time employee or new hire of Banta at the time he seeks reimbursement for his expenses. The Court determines that under the terms of the relocation agreement, Walsh was not a full-time employee or a new hire of Banta after he was terminated on December 16, 2004.

Walsh argues that, following his termination, he remained a "new hire" of Banta and is therefore entitled to reimbursement for the relocation expenses he incurred after his termination. In support of this argument, Walsh points to the relocation agreement's

6

language stating that he must be a "full-time employee *or* new hire" as evidence that a "new hire" must not be a current employee. (Mem. in Opp'n at 9; Dvorak Aff. Ex. 3 at 3 (emphasis added).) Walsh also argues that he was a "new hire" for a period of one year after the date he began his employment because his position as creative director was a "new" position and because his employment was intended for a period of at least fifty-two weeks.

Walsh's contention that he is entitled to relocation expenses following his termination is without merit. The relocation agreement's distinction between "full-time employees" and "new hires" does not evince the parties' intent to provide benefits to an individual who is not employed by Banta at the time his expenses are incurred. Instead, the distinction operates to grant relocation benefits to two separate groups of employees: individuals transferred to a different region while employed by Banta and individuals moving to a different region in order to commence their employment with Banta. The policy cannot be reasonably understood to mean that individuals who are no longer employed by Banta may still obtain relocation expenses. Accordingly, the Court determines that under the relocation agreement's plain and ordinary meaning, an individual must be employed by Banta at the time he incurs a relocation expense in order to be a "new hire" and entitled to relocation expenses.

Walsh also was not a "new hire" under the relocation agreement after his employment was terminated. The fact that Banta employed Walsh in a new position for what was originally intended to be at least fifty-two weeks does not establish that Walsh

was a "new hire." As stated above, the relocation agreement requires that an individual be a Banta employee in order to be considered a "new hire." Therefore, the fact that Walsh was employed in a new position and was originally intended to be employed for fifty-two weeks does not establish that Walsh was a "new hire" under the relocation agreement.

### Banta's Control Over the Condition of Employment

Walsh next argues that he is entitled to the relocation expenses he incurred after his employment was terminated because his employment status was under the exclusive control of Banta. In support of this argument, Walsh presents Minnesota authority that a party to a contract must perform its contract obligations when it <u>unjustifiably</u> prevents or hinders the occurrence of a condition precedent to the contract. <u>See</u> <u>Minnwest Bank Cent. v. Flagship Properties, LLC</u>, 689 N.W.2d 295, 300 (Minn. Ct. App. 2004).

Walsh, however, has failed to present evidence that Banta <u>unjustifiably</u> prevented or hindered the occurrence of a condition precedent to the contract when it terminated his employment. Walsh appears to argue that he was not an "at-will" employee and, therefore, the termination of his employment unjustifiably prevented a condition precedent to the repayment agreement. (Mem. in Opp'n at 12-13.) He has not, however, brought a claim for wrongful termination. Walsh's repayment agreement explicitly states that he is an "at-will" employee. (Dvorak Aff. Ex. 14). His employment application states that his offer of employment "should not be construed to imply the existence of an employment contract for any specified period of time and that the employment relationship [may] be terminated

at any time by either party for any reason."[2] (Dvorak Aff. Ex. 15). In Minnesota, an "at-will" employer may discharge an employee for any reason or no reason unless it violates a clear mandate of public policy. <u>Anderson-Johanningmeier v. Mid-Minnesota Women's Ctr., Inc.</u>, 637 N.W.2d 270, 273 (Minn. 2002). Walsh offers no mandate of public policy to support a contention that the termination of his employment was wrongful and he makes no such claim in this action. Therefore, Banta's termination of Walsh's employment was not an unjustifiable hindrance of his employment.

Walsh also has not alleged that Banta took any action to prevent Walsh from completing his move, and incurring all of his relocation expenses, before his employment was terminated in December 2004. Consequently, although Banta had the power to terminate Walsh's employment, its decision to do so was not an unjustifiable hindrance of a condition precedent to the contract.

### Consideration for the Relocation Agreement

Walsh next argues that Banta's requirement that Walsh be employed to receive reimbursement for relocation expenses is invalid because it was not supported by independent consideration. Walsh notes that although he signed his employment agreement on June 22, 2004, he was not told he would not receive relocation benefits if he was not

---

[2]Walsh appears to argue that he was not an at-will employee because (1) he was hired to implement the one-year business plan he had drafted while interviewing with Banta and (2) he was required to repay Banta for the moving expenses he had incurred if he quit during his first year. (Mem. in Opp'n at 11-13.) However, assuming these facts to be true, they do not controvert the plain language in Walsh's repayment agreement and his employment application that his employment was at-will.

employed until June 28, 2004. Therefore Walsh contends that Banta's requirement that he must be employed in order to receive relocation reimbursements constitutes an additional term in his employment contract not supported by consideration.

However, the employment letter signed by Walsh on June 22, 2004, specifically stated that Walsh was eligible for reimbursement expenses "according to Banta Corporation['s] relocation policy." (Dvorak Aff. Ex. 2.) Therefore, Walsh's offer of employment promised only the relocation benefits of Banta's relocation policy. Furthermore, Walsh went through the relocation agreement "page by page" with a Banta employee before signing the relocation agreement on June 28, 2004. The fact that Walsh signed the relocation agreement after he signed the letter offering his employment does not alter the provisions of his employment offer. Accordingly, the condition that Walsh be employed to be eligible for relocation benefits was not an additional term to the employment contract for which additional consideration was required.

## Promissory Estoppel

Minnesota requires that a plaintiff prove three elements to establish a claim for promissory estoppel: 1) a clear and definite promise made by the defendant, 2) intended to induce reliance and the promisee relied to his or her detriment, and 3) the promise must be enforced to prevent injustice. Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn. 1992).

In the instant case, Walsh argues that he was given a clear, definite promise that all of his relocation expenses would be reimbursed. However, Walsh fails to provide any

evidence of a promise that his relocation expenses would be reimbursed even if his employment ended. The employment letter signed by Walsh stated he was eligible for reimbursement expenses "according to Banta Corporation['s] relocation policy." As explained above, this statement does not constitute a promise that Walsh would be reimbursed for moving expenses after he was terminated. Therefore, Walsh has failed to establish a clear and definite promise that would entitle him to relief under a theory of promissory estoppel.

Even if Walsh had established that he was given a definite promise that all of his relocation expenses would be reimbursed, he has not established that the promise must be enforced to prevent injustice. Under Minnesota law, whether a promise must be enforced to prevent injustice "is a legal question for the court, as it involves a policy decision." Cohen, 479 N.W.2d at 391. In the instant case, Walsh was under no legal obligation to either sell his home in Massachusetts, purchase his home in Minnesota, or move any of his belongings to Minnesota following his loss of employment. (Butler Aff. Exs. 14, 15, 16; Dvorak Aff. Exs. 6, 8, 9.) He was specifically informed by both Banta's personnel and legal departments that Banta would not reimburse him for expenses he incurred after his employment was terminated. (Walsh Dep. Tr. at 66-68; Dvorak Aff. Ex. 4.) Accordingly, the Court determines that Walsh has not established that, assuming Banta had promised to pay his relocation expenses, the Court must enforce that promise to prevent injustice.

Therefore, Walsh has failed to establish a claim of promissory estoppel that entitles him to relief.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendant Banta Corporation's Motion for Summary Judgment (Doc. No. 12) is **GRANTED** and Plaintiff Michael Walsh's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: September 15, 2006                         s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge